No. 13-2160

## IN THE UNITED STATED COURT OF APPEALS FOR THE FOURTH CIRCUIT

_____

### BARBARA HUDSON,

*Plaintiff-Appellee*,

v.

### PITTSYLVANIA COUNTY, VIRGINIA, *et al.*,

*Defendants-Appellants*.

_____

On Appeal from the United States District Court
For the Western District of Virginia
Danville, Division

_____

### RESPONSE BRIEF OF APPELLEE

Rebecca K. Glenberg (VSB No. 44099)
American Civil Liberties Union
   Foundation of Virginia, Inc.
701 East Franklin Street, Suite 1412
Richmond, Virginia 23219
(804) 644-8080
Fax: (804) 649-2733
rglenberg@acluva.org

Daniel Mach
Heather L. Weaver
ACLU Program on Freedom
   of Religion and Belief
915 15th Street, NW
Washington, DC 20005
 (202) 675-2330
Fax: (202) 546-0738
dmach@aclu.org
hweaver@aclu.org

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-2160__      Caption: __Barbara Hudson v. Pittsylvania County, Virginia, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Barbara Hudson__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
      (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ Rebecca K. Glenberg                    Date:        09/23/2013

Counsel for:  Appellee Barbara Hudson

## CERTIFICATE OF SERVICE
**************************

I certify that on _____09/23/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Rebecca K. Glenberg                                09/23/2013
        (signature)                                        (date)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………...iii

JURISDICTIONAL STATEMENT……………………..………………………1

ISSUES PRESENTED………………………………………………………..1

STATEMENT OF THE CASE………………………………………………2

STATEMENT OF FACTS………………………………………………....4

SUMMARY OF ARGUMENT…………………………………………….7

ARGUMENT……………………………………………………….....8

I.     THE APPEAL FOM THE DISTRICT COURT'S ORDERS
ON THE MERITS MUST BE DISMISSED AS UNTIMELY
FILED……………………………………………………8

II.    THE BOARD'S PRACTICE OF OPENING MEETINGS
WITH SECTARIAN PRAYERS VIOLATES THE FIRST
AMENDMENT……………………………………………10

     A. Fourth Circuit Precedent Directly on Point
Mandates a Finding That the Board's Practice Is
Unconstitutional……………………………………10

     B. The Board's Claim That This Case is "Non-Justiciable" Is
Without Merit…………………………………………15

III.   MS. HUDSON HAS STANDING TO CHALLENGE THE
BOARD'S UNCONSTITUTIONAL PRAYER PRACTICES………...18

IV.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
       IN ITS AWARD OF ATTORNEY'S FEES AND COSTS………………..20

CONCLUSION………………………………………………………………………...24

# TABLE OF AUTHORITIES

<u>Cases</u>

*Allen v. Wright,* 468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Americans United for Separation of Church and State v.*
    *Reagan,* 786 F.2d 194 (3d Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ballard v. Schweiker*, 724 F.2d 1094 (4th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . .20

*Brodziak v. Runyon*, 145 F.3d 194 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . .20

*Budinich v. Becton Dickinson & Co.*, 486 U. S. 196 (1988) . . . . . . . . . . . . . . . . . 9

*Cent. Pension Fund of the Int'l Union of Operating Eng'rs. v.*
    *Ray Haluch Gravel Co.*, 695 F.3d 1 (1st Cir. 2012) . . . . . . . . . . . . . . . . . . . 9

*County of Allegheny v. ACLU Greater Pittsburgh Chapter,*
    492 U.S. 573 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11,16,17

*Daly v. Hill*, 790 F.2d 1071(4th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . .20-21

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) . . . . . . . . . . . . . . . .16

*Hall v. Bradshaw*, 630 F.2d 1018 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re U.S. Catholic Conference,* 885 F.2d 1020 (2d Cir.1989) . . . . . . . . . . . . . . 19

*Joyner v. Forsyth* County, 653 F.3d 341 (4th Cir. 2011) . . . . . . . . . . . . . . . . *passim*

*Kurtz v. Baker,* 829 F.2d 1133 (D.C.Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lee v. Weisman,* 505 U.S. 577 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15,16

*Marsh v. Chambers*, 463 U.S. 783 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

*McAfee v. Boczar*, 738 F.3d 81 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*McCreary County v. ACLU,* 545 U.S. 844 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Mellen v. Bunting*, 341 F.3d 312 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*North Carolina Civil Liberties Union Legal Foundation v.*
    *Constangy*, 947 F.2d 1145 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Perry v. Bartlett*, 231 F.3d 155 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Plyler v. Evatt*, 902 F.2d 273 (4th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union*
    *of Operating Eng'rs*, 134 S. Ct. 773 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000) . . . . . . . . . . . . . . . . . . . 15

*Simpson v. Chesterfield County Bd. of Supervisors*,
    404 F.3d 276 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

*Smith v. County of Albemarle*, 895 F.2d 953 (4th Cir. 1990) . . . . . . . . . . . . . . . .15

*Suhre v. Haywood County,* 131 F.3d 1083 (4th Cir.1997) . . . . . . . . . . . . . . . . 18-19

*Turner v. City Council of the City of Fredericksburg*,
    534 F.3d 352 (4th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*United States v. Richardson,* 418 U.S. 166 (1974). . . . . . . . . . . . . . . . . . . . . . . . 19

*Valley Forge Christian College v. Americans United for Separation of*
    *Church and State, Inc.,* 454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wynne v. Town of Great Falls*, 376 F.3d 292 (4th Cir. 2004). . . . . . . . . . 7,11,14,17

## Statutes and Rules

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,9

iv

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42. U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Fed. R. Civ. P. 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 58(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8,9

F.R.A.P. 4(a)(4)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## JURISDICTIONAL STATEMENT

As explained fully in appellee's motion to dismiss, filed September 23, 2013, which the appellee incorporates fully herein by reference, this Court does not have jurisdiction over the appeal from the district court's March 27, 2013 final orders granting summary judgment to the plaintiffs and enjoining the defendants' unlawful conduct, because appellants failed to file a timely notice of appeal from those orders.  The Court does have jurisdiction over the appeal from the district court's August 26, 2013 order awarding attorneys' fees and costs under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      Whether this Court has jurisdiction over the appellants' appeal from the district court's final orders on the merits issued March 27, 2013, when the notice of appeal was not filed until September 28, 2013, and the district court took no action to extend the time for filing the appeal while the motion for attorneys' fees was pending.

2.      Whether the district court correctly applied this Court's precedent to determine that regular delivery of official Christian prayers by members of the Board of Supervisors to open Board meetings violated the Establishment Clause of the First Amendment.

3.     Whether the district court correctly found that plaintiff Barbara
Hudson had standing to challenge the opening prayers of the Board of Supervisors,
where it was undisputed that Hudson regularly attended Board meetings, was
directly confronted by unwelcome government-sponsored prayer promoting
religious beliefs to which she does not subscribe, and was made to feel like an
outsider and second-class citizen in her community as a result.

4.     Whether the district court abused its discretion in its award of
reasonable attorneys' fees and costs to Hudson, who prevailed on the merits and
received all of the relief requested in the complaint.

## STATEMENT OF THE CASE

On September 26, 2011, Barbara Hudson filed a complaint under 42 U.S.C.
§ 1983 challenging the appellants' practice of opening their meetings with
sectarian prayer in violation of the First Amendment to the United States
Constitution.  (J.A. 11-19.)   On February 23, 2012, the district court denied a
motion to dismiss (J.A. 94) and granted Ms. Hudson's motion for preliminary
injunction, enjoining the appellants from "invoking the name of a specific deity
associated with any one specific faith in prayers given at [Board] meetings."  (J.A.
111-12.)

Following discovery, the parties filed cross-motions for summary judgment,
which were argued on September 21, 2012.  On March 27, 2013, the district court

entered a Permanent Injunction Order (J.A. 671-72) enjoining appellants "from repeatedly opening its meetings with prayers associated with any one religion," and a Dismissal Order granting summary judgment to Ms. Hudson, denying summary judgment to appellants, and striking the case from the active docket of the court. (J.A. 673.)

On April 5, 2013, Ms. Hudson filed a timely motion for attorney's fees and expenses pursuant to Fed. R. Civ. P. 54 and 42 U.S.C. § 1988. (J.A. 674.) On August 2, 2013, the magistrate judge issued a report and recommendation to award Ms. Hudson $53,229.92. (J.A. 709-723.) Over appellants' objections, the district court adopted the report and recommendation and ordered the recommended fees and expenses on August 26, 2013. (J.A. 732-33.) At no time before, during or after consideration of the motion for attorney's fees did the district court extend the time to appeal the March 27, 2013 orders.

On September 18, 2013, appellants filed a notice of appeal purporting to appeal from the March 27, 2013 Permanent Injunction Order and Dismissal Order and the August 26, 2013 Order awarding attorney's fees. (J.A. 736-37.) Appellees filed a motion to dismiss the appeal as untimely, which remains pending in this Court. On September 18, 2013, the defendants filed a motion in the district court seeking to stay the proceedings (J.A. 738), which the court denied on October 31, 2013.

3

## STATEMENT OF FACTS

Defendant Board of Supervisors of Pittsylvania County, Virginia ("Board") is the governing body of defendant Pittsylvania County. It is composed of seven members who serve terms of four years. The Board meets twice a month. From early in the Board's history until the district court entered a preliminary injunction in this case, the Board opened every meeting with an invocation, delivered by a member of the Board of Supervisors. (J.A. 122, 158-60.) The opening invocation at nearly every meeting was explicitly Christian in nature; that is, it invoked the name of "Jesus Christ," "Jesus," or "Christ." For example, the following prayer was delivered on August 17, 2010:

> Gracious heavenly father, we thank you for the opportunity to address you, and thank you O Lord, because you made all of this possible. You are our God, you are our King, you are the reason we are here. God, without you, and Jesus, without you, there would be no life on earth, and we would not be able to sit down and express our Christian values before the good people of Pittsylvania County. Amen.

(J.A. 122, 129.) The audience was asked to stand while the prayer was delivered. The supervisors and the audience bowed their heads during the prayer. (J.A. 123.)

Plaintiff Barbara Hudson is a resident of Pittsylvania County and has attended nearly every Board meeting since late 2008. She intends to continue attending Board meetings. (J.A. 122.) The Board's practice of opening meetings with a sectarian prayer distressed Ms. Hudson because she does not subscribe to

4

the particular faith promoted by the Board's opening prayers.   The Christian

prayers conveyed to Ms. Hudson and other non-Christian citizens the message that

they were not welcome at Board meetings, and made Ms. Hudson feel like an

outsider in her own community.  (J.A. 123.)

Although the sectarian prayers greatly upset Ms. Hudson for years, she did

not complain about them to the Board or the County until this Court issued its

opinion in *Joyner v. Forsyth County*, 653 F.3d 341 (4th Cir. 2011).  Having had

numerous relatives die in the Holocaust during her lifetime, and having herself

been beaten up for being Jewish when she was a child, she was very wary of taking

any action that would make her stand out for her religious beliefs, or that could be

perceived as challenging the majority religion.  (J.A. 123.)  The *Joyner* opinion

validated Ms. Hudson's feelings about the Christian prayers and made her feel

empowered to take a stand about them.  It made her feel that the federal courts in

this jurisdiction would back up her objections.   Therefore, after she learned about

*Joyner*, she sent an email to County Attorney J. Vaden Hunt, in which she stated

that under *Joyner*, the Board's prayer practices were unconstitutional.  (J.A. 123.)

Shortly thereafter, Ms. Hudson alerted the American Civil Liberties Union

("ACLU") of Virginia to the Board's unconstitutional prayers.  On Tuesday,

August 16, 2011, the ACLU of Virginia sent an email to each of the Board

members, with a copy to the County Attorney, explaining that the precedents of the

Supreme Court and this Court prohibit sectarian prayers to open legislative meetings, and asking the Board to cease its practice of such prayers. (J.A. 123.)

At the Board meeting on August 16, 2012, the same day that the ACLU of Virginia sent its email to the Board, Supervisor William Pritchett led the Board and the audience in a Christian prayer. Unprecedentedly, each of the other supervisors then said their own prayers, all but two of which were explicitly Christian. (J.A. 123, 129.)

At the Board meeting on September 6, 2011, more than 200 people gathered to demonstrate their support for the delivery of prayers to Jesus Christ at Board meetings. Prior to roll call, Supervisor Coy E. Harville delivered a Christian prayer. Following public comment, during which more than a dozen people spoke in favor of sectarian prayers, the Board passed a resolution pertaining to opening invocations at Board meetings. (J.A. 124.)

The resolution moved the prayer, which was previously listed on the agenda between Roll Call and the Pledge of Allegiance, to before the Roll Call, and provided that "[t]he prayer shall not be listed or recognized as an agenda item for the meeting or as part of the public business." (J.A. 132.) Although the resolution stated that "no prayer should proselytize or advance any faith, or disparage the religious faith or non-religious views of others," the Board continued opening its meetings with Christian prayer following adoption of the resolution. The only

6

changes made were that the prayer was said immediately before the opening gavel, rather than immediately after, and the invocation was not listed on the agenda. (J.A. 124, 129, 132.)  These prayers continued until the district court entered the preliminary injunction.

## SUMMARY OF ARGUMENT

This Court does not have jurisdiction to review the district court's orders on the merits in this case because a notice of appeal was not timely filed from those orders.  Accordingly, that portion of the appeal should be dismissed.

If the Court declines to dismiss the appeal, the judgment of the district court should be affirmed because it rests squarely this Court's clear precedents.  In *Wynne v. Town of Great Falls*, 376 F.3d 292 (4th Cir. 2004) held that a town council violated the Establishment Clause when its members regularly opened its meetings with prayers that invoked the name of Jesus Christ.  In *Joyner v. Forsyth County*, 653 F.3d 341 (4th Cir. 2011), the Court reaffirmed that principle, and extended it to prohibit repeated sectarian references in opening prayers delivered by invited clergy.   Because it is undisputed that the Board opens nearly every one of its meetings with an explicitly Christian prayer, this case is indistinguishable from *Wynne*.   As the district court recognized, this unequivocal, binding precedent compelled a ruling that the Board's practices were unconstitutional.

The district court's award of attorneys' fees to Ms. Hudson should also be affirmed. The Board does not dispute that Ms. Hudson was the prevailing party. Instead, it nitpicks the time her attorneys spent on various activities, failing to recognize that this Court applies an abuse of discretion standard when reviewing attorneys' fees awards. Because the Board cannot show that any part of the attorneys' fee award was an abuse of discretion, the district court's order should be affirmed.

## ARGUMENT

## I.    THE APPEAL FROM THE DISTRICT COURT'S ORDERS ON THE MERITS MUST BE DISMISSED AS UNTIMELY FILED

As set forth in appellee's motion to dismiss, the September 18, 2013 notice of appeal from the district court's March 27, 2013 orders was not filed within 30 days, and the appeal must therefore be dismissed. A pending motion for attorneys' fees tolls the time for appeal *only* if the district court provides so expressly, which it did not do in this case. *See* F.R.A.P. 4(a)(4)(iii); Fed. R. Civ. Proc. 58(e).

Since the filing of the motion to dismiss, the Supreme Court has issued an opinion that makes the need for dismissal even clearer. *Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs*, 134 S. Ct. 773 (2014). In that case, the district court entered a final judgment on the merits on June 17, 2011, while a motion for attorneys' fees was still pending. *Id.* at 778. On July 24, 2011 the court awarded attorneys' fees, and a notice of appeal from both rulings

8

was filed on August 15, 2011.  *Id*.  The Court noted that "a decision on the merits is a 'final decision' under [28 U.S.C.] §1291 even if the award or amount of attorney's fees for the litigation remains to be determined."  *Id.* at 777. (citing *Budinich v. Becton Dickinson & Co*., 486 U. S. 196 (1988)).  Thus, "[t]here was no timely appeal of the District Court's June 17 order."  *Id.* at 783.

Notably, just as the district court here stated in its order on the merits that the court would "retain jurisdiction" for purposes of enforcement and consideration of a motion for attorneys' fees (J.A. 673), the district court in *Ray Haluch Gravel* also stated in its merits order "that it would rule on the claim for attorneys' fees in a separate decision."  *Cent. Pension Fund of the Int'l Union of Operating Eng'rs. v. Ray Haluch Gravel Co.*, 695 F.3d 1, 4 (1st Cir. 2012).  Such express reservation of the attorneys' fees issue, however, was not sufficient under Rule 58(e) to extend the time to file and appeal from the merits decision.  *Ray Haluch Gravel*, 134 S.Ct. at 781-82.

For these reasons, as well as those set forth in the motion to dismiss, the appeal from the March 27, 2013 orders should be dismissed for want of jurisdiction.

## II. THE BOARD'S PRACTICE OF OPENING MEETINGS WITH SECTARIAN PRAYERS VIOLATES THE FIRST AMENDMENT.

### A. Fourth Circuit Precedent Directly on Point Mandates a Finding That the Board's Practice Is Unconstitutional.

The Supreme Court's precedent, as interpreted by this Court's extensive jurisprudence on legislative prayer, leaves no room for doubt about the constitutionality of the Board's prayer overtly Christian practices. Faithfully applying this precedent, the district court correctly invalidated the Board's regular recitation of sectarian prayers.

In *Marsh v. Chambers*, 463 U.S. 783, 792 (1983), the Supreme Court upheld the right of the Nebraska Legislature to invoke divine guidance in opening its sessions. "In recognizing the value of invocations, [however,] *Marsh* did not suggest that there are no limits on the practice of legislative prayer." *Simpson v. Chesterfield County Bd. of Supervisors*, 404 F.3d 276, 283 (4th Cir.2005). In *Marsh*, after a Jewish senator expressed his discomfort with sectarian prayers, the chaplain "removed all references to Christ" in future invocations. *Marsh*, 463 U.S. at 793 n.14. By the time the case was heard by the Court, then, the record reflected that the prayers had been "nonsectarian" for several years—a key point of fact that the Court confirmed during oral argument and specifically noted in its opinion. *See id.*; Oral Arg. at 36:40, id., available at http://www.oyez.org/cases/ 1980-1989/1982/1982_82_23 (asking counsel to confirm that chaplain had "devoided

10

himself of the uniquely Christian aspect" of the prayers after receiving a complaint). In *County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573 (1989), the Supreme Court again affirmed that the prayers in *Marsh* were acceptable only because they did not "have the effect of affiliating the government with any one specific faith or belief . . . because the particular chaplain 'removed all references to Christ.'"  *Id.* at 603 n.52.

In light of *Marsh* and *Allegheny*, this Court has repeatedly held that consistently sectarian legislative prayer constitutes an "advancement" of a particular faith in violation of the Establishment Clause.  In *Wynne v. Town of Great Falls*, 376 F.3d 292 (4th Cir. 2004), the Court invalidated a town council's practice of having a councilmember open meetings with a Christian prayer.  The Court concluded that:

> The invocations at issue, which specifically call upon Jesus Christ, are simply not constitutionally acceptable legislative prayer like that approved in *Marsh*. Rather, they embody the precise kind of "advancement" of one particular religion that *Marsh* cautioned against.

376 F.3d at 301-02.  The Court further explained that whereas the prayers approved of in *Marsh* had been "nonsectarian" and "civil," the prayers at issue in *Wynne* "'frequently' contained references to 'Jesus Christ,' and thus promoted one religion over all others, dividing the Town's citizens along denominational lines."

11

*Id*. at 298-99.  Accordingly, the town's opening prayer practices were unconstitutional.

In *Simpson*, this Court affirmed that sectarian legislative prayers are constitutionally unacceptable.  There, the Court upheld the Chesterfield County Board of Supervisors' policy of inviting Christian, Jewish, and Muslim clergy to deliver opening invocations at meetings.  The county's policy was sufficiently inclusive, the Court held, because it specifically prohibited sectarian prayers.  The policy "track[ed] the language of *Marsh*, stat[ing] that each 'invocation must be *non-sectarian* with elements of the American civil religion and must not be used to proselytize or advance any one faith or belief or to disparage any other faith or belief.'"  404 F.3d at 278 (emphasis added).  Further, the county, "seeking to avoid the slightest hint of sectarianism, revised its invitation letter to the clergy" and began directing clergy "to avoid invoking the name of Jesus Christ . . . ."  *Id.* at 279.  The Court further reasoned: "When we gather as Americans, we do not abandon all expressions of religious faith.  Instead, our expressions evoke common and inclusive themes and forswear, as Chesterfield has done, the forbidding character of sectarian invocations."  *Id.* at 287.[1]

---

[1] Applying *Simpson*, this Court upheld a city council's decision to allow its members to deliver only nonsectarian prayers.  *Turner v. City Council of the City of Fredericksburg*, 534 F.3d 352, 356 (4th Cir. 2008).  The Court explained that such a policy is "squarely within the range of conduct permitted by *Marsh* and *Simpson*.  The restriction that prayers be nonsectarian in nature is designed to make

In *Joyner v. Forsyth County*, 653 F.3d 341 (4th Cir. 2011), this Court continued to insist that legislative meetings must not be regularly opened with sectarian prayer.   There, a county board of commissioners invited clergy from all of the local congregations to deliver prayers.  The result was that "almost four-fifths of the prayers referred to 'Jesus,' 'Jesus Christ,' 'Christ,' or 'Savior.'"  *Id.* at 334.  The Court held that this practice was unconstitutional because it "resulted in sectarian invocations meeting after meeting that advanced Christianity and that made at least two citizens feel uncomfortable, unwelcome, and unwilling to participate in the public affairs of Forsyth County."  *Id.* at 354.  The Court concluded that "Citizens should come to public meetings confident in the assurance that government plays no favorites in matters of faith but welcomes the participation of all."  *Id.* at 355.

These decisions all recognize that sectarian prayers at government meetings undermine one of the main purposes of the Establishment Clause: to prevent division of the populace along religious lines.  As the Court explained in *Joyner*,

> To plant sectarian prayers at the heart of local government is a prescription for religious discord.  In churches, homes, and private settings beyond number, citizens practice diverse faiths that lift and nurture both personal and civic life.  But in their public pursuits, Americans respect the manifold

_____

the prayers accessible to people who come from a variety of backgrounds, not to exclude or disparage a particular faith."

beliefs of fellow citizens by abjuring sectarianism and embracing more inclusive themes.

*Id.*

In this case, it is undisputed that, prior to the district court's preliminary injunction of February 3, 2012, the Board of Supervisors opened nearly all of its meetings with a prayer delivered by a member of the Board, and that more than 83% of those prayers specifically referred to Jesus Christ. As the district court held, "[t]his case is factually and legally indistinguishable from *Wynne*, which, as controlling precedent, requires the court to reject the Board's argument that its prayer practice passes constitutional muster." (J.A. 661.)

In light of this Court's clear precedents, the Board can defend its repeated use of sectarian prayer only by ignoring the applicable case law. Indeed, the Board's brief does not even cite *Wynne* – a case presenting virtually identical facts – a single time, except in quoting the district court ruling. (Opening Br. at 17.) The Board insists that this case must be decided "according to the text of the First Amendment and by *Marsh*" (Opening Br. at 24) – and appellee does not disagree. As this Court has held repeatedly, however, the First Amendment and *Marsh* prohibit the Board from consistently opening its meetings with prayers that invoke the name of Jesus Christ.[2]

---

[2] Likewise, the Board's claim that its prayer procedures are not "laws" and do not "respect[] and establishment of religion" (Opening Br. at 31-35) simply ignores the

B. <u>The Board's Claim That This Case Is "Non-Justiciable" Is Without Merit</u>

According to the Board (Opening Br. at 18-23), this Court is incapable of determining whether the challenged prayers are sectarian, and the issue is therefore "non-justiciable." This claim also contradicts this Court's clear precedents.

The Supreme Court recognized in *Lee v. Weisman*, 505 U.S. 577, 598 (1992) that "jurisprudence in this area is of necessity one of line-drawing." Thus, in *Joyner*, this Court explicitly rejected the notion that it was somehow improper to review the prayers at issue in order to determine whether, taken as a whole, they indicated government support for a particular religious viewpoint:

> Quite simply, this stark approach leaves the court without the ability to decide the case, by barring any substantive consideration of the very practice under challenge. It is to say the least an odd view of the judicial function that denies courts the right to review the practice at issue. For to exercise no review at all — to shut our eyes to patterns of sectarian prayer in public forums — is to surrender the essence of the Establishment Clause and allow government to throw its weight behind a particular faith. *Marsh* did not countenance any such idea.

*Joyner*, 653 F.3d at 351.

---

multitude of cases in which the Supreme Court and this Court have applied the Establishment Clause to government prayer and other government actions that are not formal legislative actions. *See, e.g., McCreary County v. ACLU of Ky.,* 545 U.S. 844 (2005); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000); *Lee v. Weisman,* 505 U.S. 577 (1992); *Mellen v. Bunting*, 341 F.3d 312 (4th Cir. 2003); *N.C. Civil Liberties Union Legal Found. v. Constangy*, 947 F.2d 1145 (1991); *Smith v. County of Albemarle*, 895 F.2d 953 (4th Cir. 1990); *Hall v. Bradshaw*, 630 F.2d 1018 (1980).

This Court's approach is validated by Supreme Court precedent indicating that it is often necessary for courts to determine whether prayer or other government activity is sectarian in order to decide Establishment Clause issues. In his dissent in *Lee,* for example, Justice Scalia "concede[d]":

> [O]ur constitutional tradition, from the Declaration of Independence and the first inaugural address of Washington . . . down to the present day, has, with a few aberrations, ruled out of order government-sponsored endorsement of religion . . . where the endorsement is sectarian, in the sense of specifying details upon which men and women who believe in a benevolent, omnipotent Creator and Ruler of the world are known to differ (for example, the divinity of Christ).

505 U.S. at 641. The majority's opinion in *Lee* similarly defined a "sectarian" prayer as one that "uses ideas or images identified with a particular religion . . . ." *Id*. at 588. And reflecting on the prayers upheld in *Marsh*, the Supreme Court explained that the legislative invocations did not have the impermissible "effect of affiliating the government with any one specific faith or belief" precisely because "the particular chaplain had 'removed all references to Christ.'" *Allegheny*, 492 U.S. at 598 (quoting *Marsh*, 463 U.S. at 793 n. 14).[3]

---

[3] The *Allegheny* Court noted elsewhere that "praise to God in Christian terms is indisputably religious—indeed sectarian . . ." 492 U.S. at 598. *See also Lee*, 505 U.S. at 589 (noting that a nonsectarian prayer would not include "explicit references to the God of Israel, or to Jesus Christ, or to a patron saint"); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 42 (2004) (O'Connor, J., concurring) (explaining that the Pledge of Allegiance is not sectarian: "It does not refer to a nation 'under Jesus' or 'under Vishnu,' but instead acknowledges religion in a general way: a simple reference to a generic 'God'").

In support of its non-justiciability argument, the Board provides examples of language that, it argues, would make for difficult line-drawing between sectarian and nonsectarian.  (Opening Br. at 19-20.)   But the fact that hypothetical hard cases may be posed does not mean that courts should "abdicate all constitutional scrutiny" of government practices that promote a particular religion.  *Joyner*, 653 F.3d at 352.  *See also Allegheny*, 492 U.S. at 630 (O'Connor, J., concurring) ("We cannot avoid the obligation to draw lines, often close and difficult lines, in deciding Establishment Clause cases.").

In any event, *this* case is not difficult.  In *Wynne*, "[r]ather than 'parsing' the details of a particular prayer, we looked at the district court's factual findings about the frequency with which the council invoked 'Jesus,' 'Jesus Christ,' 'Christ,' or 'Savior' in determining whether the prayers actually did proselytize or advance a particular sect."  *Joyner*, 653 F.3d at 352 (citing *Wynne*, 376 F.3d at 298 n. 4) (internal quotation marks omitted).  That is all the Court needs to do here.  As the district court noted, "[t]he facts are undisputed that prior to the entry of the preliminary injunction on February 3, 2012, the Board consistently opened each of its meetings with a prayer from a Board member making a specific reference to the

17

Christian faith" (J.A. 648).[4] Under this Court's precedents, there is no question that this practice violates the Establishment Clause.

## III.  MS. HUDSON HAS STANDING TO CHALLENGE THE BOARD'S UNCONSTITUTIONAL PRAYER PRACTICES.

Ms. Hudson presented unrebutted evidence that she regularly attends Board meetings; that she objects to the Board's sectarian prayers because she does not subscribe to the particular faith promoted by the Board's opening prayer; that the prayers convey to her that she is not welcome at the meetings; that the prayers create a perception that the Board is unlikely to treat non-Christians fairly; and that the prayers make her feel like an outsider in her own community. (J.A. 122-23.)

This Court has recognized that this type of injury, incurred as a result of regular exposure to government-sponsored religion is more than sufficient to support standing for an Establishment Clause claim. The controlling case is *Suhre v. Haywood County,* 131 F.3d 1083 (4th Cir.1997), which held that a plaintiff who periodically viewed a Ten Commandments display in a courtroom had standing to challenge the display. The Court explained, "[t]he injury that gives standing to plaintiffs in these cases is that caused by unwelcome direct contact with a religious display that appears to be endorsed by the state." 131 F.3d at 1086. In this case,

---

[4] This finding is based on plaintiff's undisputed evidence that in the year preceding the lawsuit, 87.5% of Board meetings were opened with a prayer that mentioned "Jesus," "Christ," or "Jesus Christ," and that explicit references to Jesus Christ continued until the district court entered a preliminary injunction. (J.A. 128-130).

Ms. Hudson has shown that she regularly attends Board meetings, putting her in direct contact with Christian prayers that cause her distress. This is sufficient to establish standing under *Suhre*.

The Board characterizes Ms. Hudson's injury as a "generalized grievance" rather than a particularized injury. As this Court explained, however, "direct contact with an unwelcome religious exercise or display works a personal injury distinct from and in addition to each citizen's general grievance against unconstitutional government conduct." *Suhre*, 131 F.3d at 1086. Ms. Hudson's direct contact with Board's prayer distinguishes this case from the cases cited by the Board. In each of those cases, the plaintiff challenged a practice with which he did not have direct contact, but observed from a distance. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464 (1982); *In re U.S. Catholic Conference,* 885 F.2d 1020 (2d Cir. 1989); *Allen v. Wright,* 468 U.S. 737, 755 (1984); *Kurtz v. Baker,* 829 F.2d 1133 (D.C.Cir.1987); *Americans United for Separation of Church and State v. Reagan,* 786 F.2d 194 (3d Cir.1986); *United States v. Richardson,* 418 U.S. 166, 179 (1974). As in *Suhre,* the "critical factual distinction" is "the proximity of the plaintiffs to the conduct they challenged." 131 F.3d at 1087.[5]

---

[5] The Board's lengthy description of Ms. Hudson's history of conflicts with the Board (Opening Br. at 42-46) is simply irrelevant. As the district court wrote: "Hudson's historic role as a Board antagonist is beside the point. The fact that

## IV.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ITS AWARD OF ATTORNEY'S FEES AND COSTS.

This Court "review[s] for abuse of discretion a district court's award of attorney's fees, but, we will only reverse such an award if the district court is 'clearly wrong' or has committed an 'error of law.'" *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (citing *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998)).  "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (U.S. 1983).  As the Court has explained:

> The fixing of attorney's fees . . . is primarily the task of the district court. . . . It is important that the district court remain primarily responsible for resolving fee disputes, because it is in the better position to evaluate the quality and value of the attorney's efforts.

*Daly v. Hill*, 790 F.2d 1071, 1079 (4th Cir. 1986) (quoting *Ballard v. Schweiker*, 724 F.2d 1094, 1098 (4th Cir. 1984)).

The Board does not identify any legal errors made by the district court in calculating attorneys' fees.  Instead, appellants raise minor disagreements with the district court's assessment of the hours reasonably expended by attorneys on the case.  These are precisely the kind of issues that district court "is in the better position to evaluate." *Daly*, 790 F.2d at 1079.  In *Daly*, for example, this Court

---

Hudson has clashed with the Board in the past cannot absolve the Board of its clear violation of the Establishment Clause or change the fact that Hudson personally experienced the Board's practice of opening each meeting with a Christian prayer that was offensive to her." (J.A. 652-63.)

20

found that the district court was in the best position to determine whether the time attorneys spent conferencing with clients was excessive, whether time spent by more than one attorney on taking and preparing for depositions was duplicative, and whether time spent on the petition for attorneys' fees was excessive.  790 F.2d at 1079-80.

The magistrate judge's report and recommendation, which was adopted by the district court, carefully considered all of the points the appellants raise on appeal, and in some cases made downward adjustments in response to those arguments.  *See, e.g.*, J.A. 719-20 (declining to reimburse travel and court time for attorneys Frank Feibelman and Thomas Fitzpatrick).

In light of this Court's limited role in reviewing attorneys' fee awards, appellee will not undertake a detailed rebuttal to the Board's complaints, but makes the following brief observations:

1.    As the magistrate judge recognized (J.A. 716-17), Ms. Hudson is entitled to compensation for time on her motion to proceed using a pseudonym, even though that motion was unsuccessful.  In considering a plaintiff's prevailing party status, a court determines whether the plaintiff has succeeded on each claim, not each individual motion within a claim.  "[E]ntitlement to fees for one aspect of a protracted litigation does not turn narrowly on whether the party prevailed on that particular matter, but whether a separate claim or, as here, a separate proceeding is

21

so unrelated as to justify treating it as a 'separate lawsuit[ ].'" *Perry v. Bartlett*, 231 F.3d 155, 163 (4th Cir. 2000) (quoting *Plyler v. Evatt*, 902 F.2d 273, 280 (4th Cir.1990)).   Thus, in *Perry*, this Court affirmed an award of attorney's fees for plaintiff's unsuccessful interlocutory appeal of a denial of a preliminary injunction, because the appeal was part of litigating a claim on which the plaintiffs ultimately prevailed.  "The district court found that [plaintiff's] pursuit of interlocutory relief *was related to the case in chief*, and that, therefore, [plaintiff] was entitled to its attorneys' fees for this work. Its decision in this regard was not an abuse of discretion." 231 F.3d at 163 (emphasis added).

2.    Lead attorney Rebecca Glenberg submitted a declaration explaining how the time spent by co-counsel was necessary to the case.  (J.A. 703.)  The magistrate judge carefully examined this declaration and the attorneys' time sheets and determined that "the work performed by Mr. Fitzpatrick was non-duplicative, properly limited, and of the sort to be undertaken by a more junior lawyer."  (J.A. 719.)  Further, "the time spent by Mr. Feibelman reviewing and editing the pleadings was reasonable," and "[r]elying on co-counsel to review and edit pleadings is the type of division of responsibility that reflects each counsel's distinct contribution to the case, and is not impermissible 'duplication' that must be avoided." (J.A. 719.)   Appellants' complaints about the time Mr. Fitzpatrick and Mr. Feibelman billed for travelling to and attending hearings (Opening Br. at 51-

52) are inapposite, because the magistrate judge declined to award any reimbursement for that time.  (J.A. 719-20.)

3.    Ms. Glenberg also provided a detailed explanation for various time entries to which appellants object, including time listening to recordings of prayers at Board meetings and on the attorney's fees petition.  (J.A. 703-05.)   The magistrate judge "reviewed Ms. Glenberg's fee request in detail," and found that "[d]efendants provide no substantive basis for the court to question Ms. Glenberg's billing entries and declarations."   The magistrate therefore found "the hours billed by Ms. Glenberg to be reasonable, especially in light of Ms. Hudson's successful result."   (J.A.718.)[6]

Because the district court correctly applied the law and did not abuse its discretion in determining the amount of attorneys' fees, the award should be affirmed.  Additionally, if Ms. Hudson prevails on appeal, the case should be remanded to the district court for consideration of a motion for attorneys' fees and costs related to the appeal.

---

[6] The appellants object to Ms. Glenberg spending .6 hours on "Review online comments re prayer issue," but such review was necessary for Ms. Hudson's motion for leave to proceed using a pseudonym, which described in detail the local public acrimony toward Ms. Hudson and her attorneys.

23

## CONCLUSION

For the foregoing reasons, appellee respectfully requests that the appeal from the district court's March 27, 2013 orders on the merits be dismissed, or, alternatively, that those orders be affirmed. Appellee further requests that the district court's August 26, 2013 order awarding attorneys' fees be affirmed, and that the case be remanded to allow the district court to consider appellee's motion for attorney's fees and costs incurred in the course of this appeal.

_____/s/_____

Rebecca K. Glenberg (VSB No. 44099)
American Civil Liberties Union of
    Virginia Foundation, Inc.
701 East Franklin Street, Suite 1412
Richmond, Virginia 23219
(804) 644-8080
Fax: (804) 649-2733
rglenberg@acluva.org

Daniel Mach
Heather L. Weaver
ACLU Program on Freedom
    of Religion and Belief
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: (202) 546-0738
Email: dmach@aclu.org
hweaver@aclu.org

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)

Pursuant to Rule 32(a)(7) of the F.R.A.P.

1. This brief has been prepared using fourteen-point, proportionally spaced, serif typeface: Microsoft Word, Times New Roman, 14 point.

2. Exclusive of the table of contents, table of authorities and the certificate of service, this brief contains 5,646 words.

_____/s/_____
Rebecca K. Glenberg

## CERTIFICATE OF SERVICE

I hereby certify that on this 11[h] day of February, 2014, I electronically filed the foregoing with the Clerk's CM/ECF system, which will serve a copy upon all counsel of record.

_____/s/_____
Rebecca K. Glenberg